UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA WOOD,

    Plaintiff,

v.                                              Lead Case No. 1:18-cv-19
                                              Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

PAMELA WOOD,

    Plaintiff,

v.                                              Case No. 1:18-cv-156
                                              Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).[1]

        Plaintiff alleged a disability onset date of October 1, 2010. PageID.202. Plaintiff identified her disabling conditions as osteoarthritis, chronic dry eye, chronic obstructive pulmonary disease (COPD), Epstein Barr virus, tinnitus, and depression. PageID.205. Prior to

---

[1] All citations to documents and records are found in the Lead Case unless otherwise noted.

1

applying for DIB, plaintiff completed two years of college and had past employment as an art consultant, cashier, cook, custodian, cleaner, and utility worker. PageID.49, 207. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 1, 2017. PageID.40-51. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

I. **LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

2

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2010, through her date last insured of December 31, 2013. PageID.42. At the second step, the ALJ found that through the date last insured, plaintiff had the following severe impairments: COPD; degenerative joint disease of the knees with right medial meniscus tear; degenerative joint disease of the hands; history of bilateral carpal tunnel release, with recent recurrence on left; chronic Epstein Barr virus infection with chronic fatigue; and depression. PageID.42. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.42.

The ALJ decided at the fourth step:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must be able to change her position between sitting and standing every 15 to 30 minutes, as needed. She can occasionally climb stairs or ramps, but never climb ladders, ropes, or scaffolds. She can frequently balance or stoop, but never kneel or crawl, and can occasionally crouch. She must avoid environments with extreme cold or heat, extreme humidity, or excessive pulmonary irritants. She can handle and finger frequently. She is limited to simple and routine tasks. She cannot interact with the public, but can occasionally interact with coworkers or supervisors.

PageID.45. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.45.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.49-50. Specifically, the ALJ found that plaintiff could perform unskilled, light work in the national economy such as a sorter (240,000 jobs), inspector-battery (400,000 jobs), clerical

4

assistant (165,000 jobs). PageID.50. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2010 (the alleged onset date) through December 31, 2013 (the date last insured). PageID.50.

### III. DISCUSSION

Plaintiff's brief raised four issues on appeal.

**A. The ALJ did not take into account concentration, persistence and pace (CPP) limitations she found.**

Plaintiff contends that the decision is internally inconsistent because the ALJ found that plaintiff had moderate restrictions in CPP at step three, but omitted the restriction from the residual functional capacity (RFC) finding at step four. The Court disagrees. The finding referred to by plaintiff was made at step three of the sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04. PageID.43-45. The reference to CPP in "paragraph B" is written in the disjunctive. To meet the listing by showing CPP, the claimant must have an extreme or marked limitation in the ability to "concentrate, persist *or* maintain pace." Listing 12.04.B.3. Given this requirement, the ALJ's finding in paragraph "B" was not required to specify whether the moderate degree of limitation applied to concentration, persistence, pace, or any combination of those functions. *See Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717 at *15 (E.D. Wis. Apr. 29, 2014) ("Because three different functions [in paragraph 'B'] are listed in the disjunctive, however, a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions. . . the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing.").

5

If an ALJ finds that a claimant has failed to meet the requirements of a listed impairment, then the ALJ determines the claimant's RFC in a separate determination made at step four. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014). As the Court observed in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> [T]he ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.

In the present case, the ALJ incorporated the relevant portions of the "paragraph B" criteria into the RFC assessment:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

PageID.45.

Plaintiff's reliance on *Keeton v. Commissioner*, 583 Fed. Appx. 515, 533-34 (6th Cir. 2014) for the proposition that "an RFC finding for a claimant found limited in CPP must address all three limitations (i.e., concentration, persistence and pace) is misplaced. *See Palmer v. Commissioner of Social Security*, No. 1:16-cv-660, 2017 WL 2129689 at *4 (W.D. Mich. May 17, 2017) (limiting *Keeton* to situations where "it was 'not clear' whether the ALJ had incorporated

the moderate limitations that were earlier found into the hypothetical and RFC determination"). Here, the ALJ stated that the RFC includes the limitations found in the "paragraph B" analysis. PageID.45. In this regard, the RFC included the non-exertional limitations that plaintiff "is limited to simple and routine tasks" and "cannot interact with the public, but can occasionally interact with coworkers or supervisors." PageID.45. For these reasons, the ALJ did not err in omitting the step three "paragraph B" findings in either plaintiff's RFC or the hypothetical question. Accordingly, plaintiff's claim of error will be denied.

### B. The ALJ did not give adequate reasons to reject plaintiff's complaints

Plaintiff contends that the ALJ gave excessively vague reasons for rejecting her complaints. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).

Plaintiff points out two instances of the alleged vague reasoning. First, the ALJ stated:

> To the claimant's credit, she has cut back on smoking. (Hearing Testimony) However, evidence prior to the date last insured reflects that she is an everyday smoker despite being urged to quit. (*See e.g.* 2F/8)

Plaintiff contends that "[T]he ALJ mentions Plaintiff's smoking. How does that impugn her alleged limitations? The ALJ nowhere says." Plaintiff's Brief (ECF No. 13, PageID.775). The

7

medical record cited by the ALJ identifies plaintiff as a "[c]urrent every day smoker." PageID.48, 365. Contrary to plaintiff's contention, the ALJ's statement appears relevant to plaintiff's contention that she is disabled by COPD, has a hard time breathing, and plaintiff's testimony that she has cut back to 4-5 cigarettes a day. PageID.46.

Second, plaintiff contends that the ALJ's findings that she had a normal range of motion does not impugn her complaints at a doctor's visit in which she complained about shortness of breath, dizziness, fatigue and bilateral foot pain. Plaintiff's Brief at PageID.47, 775. The ALJ's finding does not appear to be related to her complaints at that time. However, the finding is related to plaintiff's contention that she has disabling arthritis. PageID.46. Accordingly, plaintiff's claim of error is denied.

### C. The ALJ mishandled the ankle problem

Plaintiff contends that the ALJ erred by failing to identify her ankle problems as a severe impairment. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Under the Social Security Act, a disability is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).

Here, the ALJ stated:

> In addition, the record reflects a history of fracture of the lower extremity (left ankle fracture in 2012). (1F/6-10; 2F/24, 25, 28) Imaging showed a nodisplaced [sic] fracture and mild degenerative joint disease of the ankle. (2F/20) Treatment records reflect ankle pain following the injury. (*See e.g.* 2F/14) April 2012 records reflect that the claimant was doing much better, did her exercises on her own, and did not go to physical therapy. She was walking well and range of motion looked "excellent." (2F/23) The claimant testified that her ankle swells which is reflected in current records (6F/12); however, records just prior to the date last insured in 2013 do not show swelling/edema. (2F/10, 6F/3) The fracture healed and did not last 12 months or longer.

PageID.42.

Plaintiff contends that the ALJ engaged in "cherry picking" the evidence to reach that conclusion. As an initial matter, the argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). That being said, the record reflects that plaintiff injured her ankle on or about January 28, 2012. PageID.327-330. By April 2012, during a six-week checkup, the doctor found that plaintiff did not go to physical therapy, that she was walking well, that her range of motion was excellent, and that the films demonstrated healing. PageID.380. The record provides substantial evidence to support the ALJ's decision that plaintiff's ankle injury did not meet the durational requirement to qualify as a severe impairment.

Even if the ALJ had erred by failing to identify this as a severe impairment, this would not constitute reversible error. The fact that some of a claimant's impairments were not deemed to be severe at step two is legally irrelevant. *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018) (failure to find impairments "not severe" at step two is legally irrelevant, because the ALJ must consider the limiting effects of all impairments, including those that are "not severe" at step four). The record reflects that. Accordingly, plaintiff's claim of error is denied.

### D. The ALJ failed to address regional jobs

Plaintiff contends that the ALJ's decision is not supported by substantial evidence at step five. In response to the ALJ's hypothetical question, the vocational expert (VE) testified as follows:

> Okay. This person could work in a variety of sorter positions. There are 55 DOT numbers for light unskilled sorters totaling about 240,000 in the country. An example would be as a mail sorter, 209.687-026. This person could also work as an inspector. There are 62 separate DOT numbers for light unskilled inspectors totaling about 400,000 in the country. An example would be as a (INAUDIBLE), 727.687-062. And this person could also work as a clerical assistant, 239.567-010. There are about 165,000 clerical assistants in the country.

PageID.109.

Plaintiff contends that this testimony did not comply with 42 U.S.C. § 423(d)(2)(A), because the VE testified as to jobs which existed nationally rather than jobs which existed in either plaintiff's region or at least two other regions. Plaintiff's Brief (ECF No. 13, PageID.778-779). Plaintiff's claim is without merit. "[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy—not just a local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). In *Phillips v. Astrue*, No. 5:10-cv-2651, 2011 WL 5526079 (N.D. Ohio Nov. 14, 2011) the court rejected an argument similar to the one set forth by plaintiff:

> The VE testified that Plaintiff could perform a total of 106,000 jobs in the national economy. (*See* Tr. 48-49.) Work that exists in the national economy is defined as work that exists either in the region where an individual lives or in several regions of the country. *Id*. (quoting 42 U.S.C. § 423(d)(2)(A)); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Plaintiff suggests that this definition requires a VE literally to state numbers of jobs in the "regional" economy as opposed to the "national" economy. This is a *non sequitur*. Plaintiff does not cite, and the Court is not aware of any legal authority that requires a VE to use magic words in his testimony to designate numbers of jobs in the "regional" economy; therefore, the Court is not persuaded that the VE should have done so here. Moreover, there is no reason to assume the VE intended a definition other than that set forth in the regulations.

*Phillips*, 2011 WL 5526079 at *11. Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: March 28, 2019                              /s/ Ray Kent
                                                   United States Magistrate Judge